BOARD OF ADJUSTMENT OF The CITY OF OKLAHOMA CITY, Oklahoma, and J. H. and Audrey Rossback, Roy H. Semtner, et al., Plaintiffs in Error,

v.

BOARD OF EDUCATION OF OKLAHOMA CITY, otherwise known as Independent School District No. 89 of Oklahoma City, Oklahoma, Applicant, Defendant in Error.

Application of BOARD OF EDUCATION, otherwise known as The Independent School District No. 89, of Oklahoma County.

No. 37927.

Supreme Court of Oklahoma.

April 1, 1958.

Rehearing Denied June 17, 1958.

A. L. Jeffrey, Municipal Counselor, Edward H. Moler, Asst. Municipal Counselor, Leslie L. Conner, and Roy H. Semtner, Oklahoma City, for plaintiffs in error.

W. A. Lybrand, Max G. Morgan, and Hal Whitten, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

The present appeal concerns the automobile parking situation at Oklahoma City's Harding High School. The school is located on a site covering Blocks 9 and 10 of said City's Ross Mann Addition. This site is bounded on the north by Northwest Thirty-third Street, on the east by Shartel Street, on the south by West Hill Street, and on the west by North Olie Street.

The original building was constructed about thirty years ago for use as a junior high school. More recently, because of the City's growing need for a senior high school in the same area, its Board of Education decided to convert it into a combined junior and senior high school, and, for that purpose, constructed a new addi-

tion to the building. This change in the school's status was accomplished about three years ago and has increased the school's enrollment to more than 1,200 students.

The school's auditorium forms a part of the north, or 33rd street side, of the building. Near it, said street, which is not wide enough to permit passage of autos going both east and west between others parked parallel to the curb on both sides of the street, has been widened for a distance about 1½ times the length of the auditorium to permit diagonal parking near said auditorium. Early in 1957, the Oklahoma City Board of Education, by two separate instruments, each entitled "Agreement To Purchase", secured options to buy residential properties located almost directly across 33rd Street, north of the school's auditorium and described as Lots 35-38, both inclusive, in Block 5 of the same addition, with the idea of converting said lots into a parking area. Said block is a part of a larger area north of the school that for many years has been designated, under Oklahoma City's zoning Ordinance No. 5936, as a Class "A", or "Single-Family Dwelling District." Said ordinance names the permissible uses of property in such a district, but does not mention a parking lot among them. In view of this fact, the Board of Education, apparently acting on the assumption that same was necessary, applied to the Building Superintendent of the City for a permit to use three of the lots for "off-street" parking. The Building Superintendent denied the application on the ground that said Ordinance No. 5936, does not permit such use of property in a Class "A" District. Thereafter, the Board, hereinafter referred to as Applicant, appealed from said decision to the City's Board of Adjustment, and, after a hearing before said Board, at which various owners of residential property in the same block as the proposed parking lot, appeared and objected to the granting of the application, it was denied by an Order of said Board, dated February 11, 1957. Thereafter, upon the applicant's appeal to,

and a trial de novo in, the district court, said court entered its judgment on May 7, 1957, granting the applicant a "variance to the zoning ordinances" and reversing the Board of Adjustment's Order, with directions to it, and the Building Superintendent, to grant the application. After the overruling of motions for a new trial, filed by the Board of Adjustment and various owners of property in Block 5, supra, said parties, hereinafter referred to collectively as Protestants, perfected the present appeal.

■■ As ground for assigned error of the trial court in overruling their motion to dismiss applicant's appeal to it from the Board of Adjustment's Order, and, in later overruling their demurrer to the evidence, protestants, under their "Proposition 1" assert generally, and in substance, the insufficiency of the evidence to show any ground on which the Board could have granted the applicant a variance of the zoning regulations, which they say, by failing to mention a parking lot as one of the purposes for which premises in "A" Single-Family Dwelling Districts can be used, in effect prohibits or excludes such use. They quote Sec. 16(5) B of the applicable Ordinance No. 5936, supra, Tit. 11 O.S.1951 sec. 407, and both case and textbook authority from which they devolve four elements which they say the evidence must show before it will support the allowance of an exception to, or variance of, such restrictions. These claimed essentials are as follows:

"(1) That the granting of the permit will not be contrary to the public interest.

"(2) That the literal enforcement of the ordinance will result in unnecessary hardship.

"(3) That by granting the permit, contrary to the provisions of the ordinance, the spirit of the ordinance will be observed.

"(4) That by granting the permit, substantial justice will be done."

We find much of protestant's argument to be without merit as applied to the facts of

the present case. As hereinbefore noted, Harding High School's auditorium is almost directly across 33rd Street from the lots in question, and according to the evidence adduced at the trial, some of the occasions of most acute need for additional parking around the school occur when parents of the school's students, and other adults, gather there for P.T.A., and other meetings. Nor is it contended that said auditorium, which houses plays and other entertainments and gatherings open to, and attended by, the public, is not a place "of public assembly" within the meaning of Sec. 15(9) of the applicable zoning ordinance, supra, which provides as follows:

"Places of public assembly including, among other things, churches, theatres, assembly halls and auditoriums, whether in separate buildings or a part of another building, when constructed *in any part* of the City of Oklahoma City with the exception of the "H" Business District shall provide one off-street parking space for every five (5) seats in the place of public assembly said parking space shall be provided on the same lot as the place of public assembly or on a permanently reserved space on another lot within three hundred (300) feet of said place of public assembly." (Emphasis ours.)

It is obvious from the size and capacity of Harding High School's auditorium, and the evidence showing the restrictions the City has placed on parking in the narrow streets bordering said school's premises, and the small amount of space on the school grounds now devoted to parking, that applicant's compliance with the above-quoted provision, as to said auditorium, can only be accomplished by providing additional parking space on said school's own grounds, or by acquiring, for that purpose, other lots within three hundred (300) feet of said auditorium. It is also obvious that said provision, is opposed to, and in conflict with, the exclusive character that protestants' interpretation attributes to said ordinance's specification, in its Sec. 3, of the things for which property in a Class "A" District

shall be used. Therefore, in considering these two parts of the same ordinance together, and applying to them the rules of construction (applicable to municipal ordinances and charters, as well as to statutes) requiring the giving of effect to all provisions of the enactment, and the reconciliation, if possible, of any apparent conflicts between them, (Spiers v. Magnolia Petroleum Co., 206 Okl. 510, 514, 244 P.2d 852, 857; Simmons v. Benson, 206 Okl. 539, 244 P.2d 1126; Jones v. Bayless, 208 Okl. 270, 255 P.2d 506; 37 Am.Jur., "Municipal Corporations", sec. 187), we conclude that Sec. 15(9) constitutes an addition to the uses prescribed in Sec. 3 of Ordinance No. 5936. It follows from this conclusion, that the considerations which the ordinance and statutes in question prescribe for the Board of Adjustment's granting of a "variance" in cases where a "place of public assembly" is not involved, do not apply with equal force and effect to this case, where such a place is involved. In fact, the ordinance does not specifically provide any certain procedure for implementing its Sec. 15(9). If, however, we assume, without deciding, that showings of hardship to the applicant, harmony with public interest and with the spirit of the ordinance as a whole, and the administration of justice, are all necessary to obtain permission to make, of District "A" property, a parking space for use in connection with a place of public assembly, the judgment of the trial court cannot be said to be without substantial evidence to support it. As the protestants have failed to demonstrate that the trial court's judgment is contrary to Ordinance No. 5936, as here interpreted, or to any cited rule of law or statute, properly applicable to a case like the present one, or that it is clearly against the weight of the evidence, when viewed in the light of said interpretation, we will not so hold.

■ The only other proposition of error necessary to mention is protestants' Proposition 3, in which they assert that the trial court's judgment was erroneous for the further reason that applicant is not the owner of the lots involved, and that its

Agreements To Purchase them expired, under their own terms, prior to the hearing before the Board Of Adjustment. In view of what we have already herein said to the effect that the provisions of Ordinance No. 5936, governing other applications for variances in the uses specified in said enactment's Sec. 3, are not strictly applicable to efforts to provide parking space for use in connection with places of public assembly, as contemplated by the Ordinance's Sec. 15(9), it is not necessary to treat extensively of the arguments advanced under this proposition. Suffice it to say, that in view of the latter section's use of the term "permanently reserved space", we are of the opinion that it is not necessary for those wishing to provide such space, to own the property on which it is provided. It is only logical to assume that when a building, once used as a place of public assembly, ceases to be so used, there can be no necessity, within the meaning of said section, for any longer providing such parking space. Therefore, if such space is reserved, by lease or otherwise, for as long as the building is so used, the object of the provision is accomplished. In this view of the matter, the meaning of the word "permanently" as there used, is only relative. and dependent, for its connotation of permanency, upon the permanence of the use of the building of which it is an accessory. Our view that the applicant for permission to provide such parking space does not have to be its owner is also supported by said Ordinance's Sec. 16(4), whose wording, in material part, identical with Tit. 11 O.S.1951 sec. 408, is as follows:

> "Appeals from the action of any administrative officer to the Board of Adjustment may be taken by any person aggrieved *or by any* officer, department, *board* or bureau *of the municipality affected* by any decision of the administrative officer." (Emphasis ours.)

In accord with the foregoing, we hold that it is not necessary, as protestants contend, for the party wishing a permit to provide the parking space described in Sec. 15(9),

supra, to be the owner of said space, in order to obtain such permit.

As protestants have failed to demonstrate error of the trial court in any of the assignments urged for reversal, said court's judgment is hereby affirmed.